UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA WINN,

    Plaintiff,

v.

MCLAREN EMPLOYEES'
PENSION PLAN,

    Defendant.

Case No. 18-10398
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [11] AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10]**

    Steven Winn was a longtime employee of McLaren Health. And so he earned a pension through the McLaren Employees' Pension Plan. Steven elected to receive his pension in the form of a joint and survivor 50% annuity—a financial product guaranteeing a monthly income spread over two lives. For a three-month period, Steven and his wife, Sandra Winn, received checks amounting to just over $2,300 per month. But then Steven died. And after that, consistent with a joint and survivor 50% annuity, Sandra began receiving monthly checks totaling just over $1,100 per month. After four years of receiving $1,100 per month, Sandra contested what she thought was the Pension Plan's decision to cut her monthly benefits. Sandra believed the timing of Steven's death, coupled with specific language in the pension plan, entitled her to $2,300 each month.

    Eventually, the administrator decided against her, and she filed this suit to contest that decision. Relying on their respective interpretations of the administrative record, both sides move for summary judgment. For the reasons that follow, the administrator's decision was not arbitrary and capricious.

**I.**

McLaren's Employees' Pension Plan provided a few different default distribution methods for the pension Steven Winn earned. For married pensioners like Steven, the default method was a qualified joint and survivor annuity amounting to the actuarial equivalent of a single life annuity. (ECF No. 9, PageID.369.) In layman's terms, an annuity provides a guaranteed income over a period of time in exchange for an investment. *See* Ron Lieber, *The Simplest Annuity Explainer We Could Write*, N.Y. TIMES, Dec. 15, 2018, at B1. And a joint and survivor annuity allows a married couple to extend the value of one spouse's pension over the course of two lives (i.e. Steven's wife, Sandra, would continue to receive monthly checks even after Steven's death).

Important to this case, the pension plan allowed Steven to depart from the default distribution method, so long as Sandra consented. (*Id.* at PageID.369.) Departing from the default method required Steven to formally elect an optional annuity from a menu of choices. (*Id.* at PageID.369, 409.) According to the plan, the menu of optional annuities were all equivalent (actuarially) to the default method. (ECF No. 9, PageID.369.) And the optional annuities included a joint and survivor 50% annuity. (*Id.* at PageID.369.) Joint and survivor 50% annuities allow a married couple to receive a fixed sum of money each month while both are alive, but when one of them dies, the surviving spouse receives half the fixed amount per month.

Steven elected a retirement date of November 1, 2012. (ECF No. 9, PageID.420.) But the parties dispute whether he actually retired on that date. (*Compare* ECF No. 10, PageID.426 *with* ECF No. 3, PageID.9.) In any event, on December 12, 2012, Steven and Sandra elected to depart from the default distribution method. (ECF No. 9, PageID.420.) On that date, Steven and Sandra opted to receive Steven's pension in the form of a joint and survivor 50% annuity coupled with a lump sum. (*Id.* at PageID.409–410.) Again, in layman's terms, Steven and Sandra chose to receive

a higher amount per month while both were alive, but agreed that when one of the two died, the survivor would receive half that amount per month (plus a lump sum payment).

Because Steven and Sandra changed their election in December, they did not receive their first check until January 22, 2013. (ECF No. 9, PageID.420.) And that first check covered November, December, and January, at a rate of $2,305.43 per month. (*Id.*) However, Steven died on January 17, 2013. (*Id.*) So beginning with February 2013, Sandra started to receive checks in the amount of $1,152.72 per month. (*Id.*) And she received a lump sum payment of just over $97,000. (*Id.*)

For roughly four years, Sandra received monthly checks in the amount of $1,152.72. But in 2017, she challenged whether the pension plan should have been paying her $2,305.43 all along. (*Id.*) The plan administrator rejected Sandra's challenge.

Soon after, Sandra filed this lawsuit. She disputes the plan administrator's decision. (ECF No. 1.) In time, the administrative record was docketed (ECF No. 9), and the parties filed cross motions for summary judgment. (ECF No. 10, 11).

## II.

In an ERISA case, a motion for summary judgment is not entirely on all fours with a standard Rule 56(a) motion. *See Hutson v. Reliance Std. Life Ins. Co.*, 742 F. App'x 113, 117 (6th Cir. 2018) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618–19 (6th Cir. 1998) (Gilman, J., concurring)). When an ERISA plan accords the plan administrator "discretionary authority to interpret the terms of the plan and to determine benefits[,]" at summary judgment the Court reviews the plan administrator's decision using an "arbitrary and capricious" standard. *Glenn v. MetLife (Metro. Life Ins. Co.)*, 461 F.3d 660, 666 (6th Cir. 2006) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111–15 (1989)). Arbitrary and capricious review is not "a

rubber stamp for the administrator's determination[,]" even if it is a deferential standard. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006) (citing *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004)). Under the arbitrary and capricious standard, the plan administrator's decision stands "'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Id.* (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

### III.

In rejecting Sandra's challenge, the plan administrator found that Steven died after his "annuity starting date"—a term of art defined by the plan and federal regulations. (ECF No. 9, PageID.421.) The administrator concluded that Steven's annuity starting date was November 1, 2012. Steven died in January 2013. And when a pensioner dies after his annuity starting date, the pensioner's surviving spouse receives checks either via the default distribution method or the optional annuity elected by the pensioner (with the spouse's consent). (*Id.*; *see also* ECF No. 9, PageID.369.) As Steven died after his annuity starting date, the couple opted for a joint and survivor 50% annuity, and Sandra was receiving the correct amount provided by the annuity, the administrator decided Sandra was not entitled to a greater monthly check.

Sandra disagrees. She now argues that the annuity starting date does not control. Steven died on January 17, 2013, but the first pension check arrived on January 22, 2013. So, Sandra insists, because Steven died before the checks arrived, Steven died before "distribution commenced" as that phrase is used in a provision of the pension plan. (ECF No. 10, PageID.429.) Sandra reads that provision to mean she is entitled to monthly checks in the amount of $2,305.43.[1]

---

[1] Sandra recognizes she would have to return the lump sum if she were to prevail on this argument.

(ECF No. 10, PageID.429–431.) Thus, the plan administrator's decision was arbitrary and capricious.

Not so, says the Pension Plan. According to the Pension Plan, the administrator's determination of Steven's annuity starting date was on point. And a correct determination of Steven's "annuity starting date" controls this case. Based on the plain text of the pension plan, because Steven died after his annuity starting date, Steven's election of a joint and survivor 50% annuity (to which Sandra consented) binds. As Sandra is receiving a check in line with the amount provided by a joint and survivor 50% annuity, the Pension Plan says its administrator made no error in denying Sandra's claim.

**A.**

Determining the "annuity starting date" and applying the pension plan's plain text all but decides this case. Section 5.7(a)(1) of the plan says, "a Participant who is married on the Annuity Starting Date and who *does not die before* the Annuity Starting Date shall receive the value of his benefits" via the participant's chosen method. (ECF No. 9, PageID.369 (emphasis added).) Conversely, another provision in the plan says that if a participant "*dies before* the Annuity Starting Date and has an eligible surviving spouse, the Participant's spouse shall receive an annuity equal to the amount which would be payable as a survivor annuity under the Plan's joint and 100% survivor annuity provisions." (ECF No. 9, PageID.268 (emphasis added).) Summed up, if Steven died after his annuity start date, Sandra has been receiving the correct amount all along; if Steven died before his annuity starting date, Sandra is potentially entitled to a larger amount each month (but not the lump sum).

So what is an "annuity starting date"? And, more importantly what was Steven's "annuity starting date"? The plain text of the pension plan defines "annuity starting date" as the "first day

5

of the first period for which an amount is payable as an annuity." (ECF No. 9, PageID.236.) And the plan's definition is identical to the one in the federal regulations. *See* 26 C.F.R. § 1.401(a)-20 Q&A-10(b). Helpfully, the regulation provides a few examples that pinpoint the "literal and natural meaning" of "annuity starting date." *See Barber v. Lincoln Nat'l Life Ins. Co.*, 722 F. App'x 470, 473 (6th Cir. 2018) (citing *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997)). For one, the regulation says the "annuity starting date" is not "the actual date of payment." 26 C.F.R. § 1.401(a)-20 Q&A-10(b)(2). Rather it is "the first date for which an amount is paid." *Id.* So "if participant A is to receive annuity payments as of the first day of the first month after retirement but does not receive any payments until three months later, the annuity starting date is the first day of the first month." *Id.* Put even simpler, "if an annuity is to commence on January 1, January 1 is the annuity starting date even though the payment for January is not actually made until a later date." *Id.*

Given the regulation, substantial evidence supports the plan administrator's decision that Steven's "annuity starting date" was November 1, 2012. The regulation makes plain that the "annuity starting date" is not the date on which the first check arrives. So the "literal and natural meaning" of the plan's plain language rules out Sandra's date, January 22, 2017. *Barber*, 722 F. App'x at 473. And Steven apparently elected November 1, 2012 as his retirement date, which doubles as the annuity starting date.[2] (ECF No. 9, PageID.420.) So the plan administrator was on firm ground in finding November 1 as the start of Steven and Sandra's annuity.

---

[2] Sandra appears to dispute the date of Steven's retirement. She says Steven retired on December 12, 2012 (ECF No. 1, PageID.2; ECF No. 10, PageID.426), the same day she consented to the joint and survivor 50% annuity with a lump sum (ECF No. 9, PageID.410). However, even if December 12 was Steven's annuity starting date, he still died after that date. So changing the annuity starting date does not change the result.

6

Having determined the correct annuity starting date, the administrator had substantial evidence to conclude Sandra was receiving the right amount. Steven died after the annuity starting date. And looking to the plain text of Section 5.7(a)(1), Steven and Sandra's elected method controls. Steven and Sandra chose to receive Steven's pension benefits in the form of a joint and survivor 50% annuity with a lump sum of $97,000. Having made that choice, the couple expected to receive monthly checks in the amount of $2,305.43 while both were alive and $1,152.72 after one of them died. (ECF No. 9, PageID.409.) For the time period prior to Steven's death, the couple received $2,305.43 per month; after Steven's death, Sandra received $1,152.72 per month (and the lump sum). Thus, Sandra received (and continues to receive) the amount to which she is entitled, a conclusion the plan administrator reached after a "deliberate, principled reasoning process."

Finding 5.7(a)(1) unhelpful to her position, Sandra says a different plan provision should control. She points to Section 5.7(d)(2) which is titled "time and manner of distribution." (ECF No. 9, PageID.277.) It says that "if the Participant dies before distributions begin, the Participant's entire interest will be distributed, or begin to be distributed" no later than a specific date. (ECF No. 9, PageID.277.) She says Steven died before he ever received a check, so distribution had not commenced, and she should receive Steven's entire interest, which, to Sandra, means $2,305.43 per month.

Sandra's argument is unpersuasive. Sandra reads "entire interest" to entitle her to the amount of money she would have received had Steven survived. But the plain language of 5.7(d)(2) has everything to do with the logistics of sending checks and nothing to do with the amount on the checks. All section 5.7(d)(2) does is lay a baseline for when distributions will occur if a participant dies before the checks start coming. It allows survivors to plan for when they can expect to receive money earned by their late spouse. So nothing in the plain language of the

7

provision suggests "entire interest" converts a joint and survivor 50% annuity into a different financial product. Indeed, 5.7(d)(2) operates in tandem with the rest of Section 5.7. And consistent with 5.7(a)(1), Steven and Sandra chose a joint and survivor 50% annuity with a lump sum. That was Steven's "entire interest" for the purposes of 5.7(d)(2). And the pension plan paid the lump sum and is distributing to Sandra the amount provided for by the joint and survivor 50% annuity. So Sandra is receiving Steven's entire interest.

At bottom, the plan administrator did not make an arbitrary and capricious determination. Substantial evidence supports the finding that Steven's annuity started on November 1, 2012. And the provision's plain text provides substantial evidence to support the administrator's decision to hold Sandra to the joint and survivor 50% annuity that she and Steven chose. Accordingly, Sandra's motion for summary judgment is DENIED and McLaren Employees' Pension Plan's motion is GRANTED.

SO ORDERED.

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE

Date: July 17, 2019

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, July 17, 2019, using the Electronic Court Filing system.

s/William Barkholz  
Case Manager